IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:03-CV-32-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| CONVALESCENT TRANSPORTS, | ) | |
| INC.; BRIAN CONNER; and KELLI | ) | |
| ANDERSON, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the government's motion for summary judgment and to lift stay (DE # 35), filed July 7, 2006, and the memorandum and recommendation (M&R) of United States Magistrate Judge David W. Daniel (DE # 43), recommending the court grant in part and deny in part the motion. The government urges the court enter summary judgment under the False Claims Act, 31 U.S.C. §§ 3729-33 (hereinafter "FCA"), against defendants Convalescent Transports, Inc. (hereinafter "CTI") and Brian Conner (hereinafter "Conner"). The magistrate judge recommends the court grant the government's motion as to liability, but deny the motion as to amount of damages. The government and defendant Conner have objected to the M&R.[1] In this posture, the motion is ripe for decision, and for the reasons discussed below, the court adopts in part the recommendation of the magistrate judge and grants in part the government's motion.

---

[1] The government's objection is captioned "Motion to reconsider and objection to memorandum and recommendation by the United States," and appears on the docket as a pending motion. The proper method of challenging the findings in a M&R is by filing an objection, not a motion to reconsider. See Local Civil Rule 72.4, EDNC. Accordingly, the Clerk is directed to terminate DE # 45 as an active motion on the court's docket.

## BACKGROUND

The government brought this civil action in February 2003, alleging a scheme by defendant CTI and others, including its owner and general manager, defendant Conner, to defraud Medicare and Medicaid. CTI, a North Carolina corporation, provided ambulance transportation in eastern North Carolina, and participated in the Medicare Part B Program, starting in 1990. CTI transported patients on a regular basis to and from their places of residence for outpatient dialysis treatment and other routine medical appointments.

After January 1997, regulations provided that Medicare Part B would pay for ambulance services only if "other means of transportation would endanger the beneficiary's health." 42 C.F.R. § 410.40(b)(1) (West 1998). Effective February 1999, the medical necessity requirement for payment for ambulance services is found in 42 C.F.R. § 410.40(d)(1), which provides,

> (d) Medical necessity requirements –
>
> (1) General rule. Medicare covers ambulance services, including fixed wing and rotary wing ambulance services, only if they are furnished to a beneficiary whose medical condition is such that other means of transportation are contraindicated. The beneficiary's condition must require both the ambulance transportation itself and the level of service provided in order for the billed service to be considered medically necessary. Nonemergency transportation by ambulance is appropriate if either: the beneficiary is bed-confined, and it is documented that the beneficiary's condition is such that other methods of transportation are contraindicated; or, if his or her medical condition, regardless of bed confinement, is such that transportation by ambulance is medically required. Thus, bed confinement is not the sole criterion in determining the medical necessity of ambulance transportation. It is one factor that is considered in medical necessity determinations. For a beneficiary to be considered bed-confined, the following criteria must be met:
>
> (i) The beneficiary is unable to get up from bed without assistance.

2

(ii) The beneficiary is unable to ambulate.
(iii) The beneficiary is unable to sit in a chair or wheelchair.

For Medicare to cover "medically necessary nonemergency, scheduled, repetitive ambulance services," regulations require "the ambulance provider or supplier, before furnishing the service to the beneficiary, [to] obtain[] a written order from the beneficiary's attending physician certifying that the medical necessity requirements of paragraph (d)(1) of this section are met." 42 C.F.R. § 410.40(d)(2).

Certifying information must be provided to Medicare for the ambulance provider to receive reimbursement, through a Medicare claim form or its electronic equivalent, which includes details such as patient and physician identifying information and a brief narrative explaining the diagnosis and medical necessity for the services rendered. The form also includes a certification that the information provided is accurate and the services were medically necessary. A similar claim and certification process applies to Medicaid reimbursement.

The civil complaint alleges defendants knowingly submitted or caused to be submitted false or fraudulent claims to the United States, through Medicare and Medicaid, for reimbursement for routine trips that were not, in fact, medically necessary. Thus, defendants misrepresented the nature of the patients' medical condition, and submitted false or incomplete documentation that, *inter alia*, the patients were bed-confined or required stretcher services. Other causes of action, which are not the subject of the instant motion, include payment under mistake of fact, and unjust enrichment. (See Am. Compl., ¶¶ 51-58.)

On April 15, 2004, a grand jury returned an indictment against defendants CTI and Conner, as well as two other individuals, alleging various crimes arising from the same scheme, which later

3

was superseded. (See Docket, Case No. 4:04-CR-27-FL.) Shortly before indictment, all parties jointly requested a stay of the civil action, to avoid the possibility of Fifth Amendment issues and duplicative discovery proceedings. The court granted the stay, and ordered the parties to file three months later a joint report on their position(s) concerning the propriety of the stay remaining in force. The parties in their joint report urged the court to keep the stay in place until the criminal case was fully resolved, because "the discovery in the criminal case is parallel to that needed for the civil case and is therefore effectively moving both cases forward without being duplicative." (Joint Status Rep., DE # 33, at 1.) On June 30, 2004, the court ordered the stay remain in force until related criminal matters concluded.

On October 25, 2005, a jury found defendants CTI and Conner guilty of 343 health care fraud violations. Defendant CTI entered into receivership, and defendant Conner was sentenced to one hundred fifty one (151) months imprisonment. Defendants were ordered to pay restitution in the amount of $525,537.00 to the federal government, and $78,805.48 to the North Carolina Attorney General's Office, for a total restitution figure of $604,342.48, for which these defendants are jointly and severally liable.

The order of June 30, 2004 also instructed the parties jointly to propose a new schedule for proceeding with this civil case, not later than fourteen (14) days after disposition of the criminal case. No report was filed; however, approximately six weeks after sentencing, the government filed the instant motion. Defendant Conner urges the court to maintain the stay and not move this case forward until after decision on his appeal.

DISCUSSION

## A. Standard of review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The moving party can meet this burden "by showing that there is an absence of evidence to support the nonmoving party's case." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 185 (4th Cir. 2004). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). In making a determination on a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. Bailey v. Blue Cross & Blue Shield of Virginia, 67 F.3d 53, 56 (4th Cir.1995). However, "conclusory statements, without specific evidentiary support," are insufficient to create a genuine issue of fact. Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998).

Fed. R. Civ. P. 56(d) permits the court to enter partial summary judgment on liability and partial damages, and hold over remaining issues for trial. The rule provides, in part, that the court "shall . . . make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such

further proceedings in the action as are just." FED. R. CIV. P. 56(d).

The district court conducts a *de novo* review of those portions of a magistrate judge's memorandum and recommendation to which specific objections are filed. See 28 U.S.C. § 636(b); Local Civil Rule 72.4(b), EDNC. Those portions of the memorandum and recommendation to which only general or conclusory objections are lodged may be affirmed by the district court unless clearly erroneous or contrary to law. See Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Defendant Conner has appealed the conviction and sentence, but the pendency of a criminal appeal does not mandate this proceeding remain stayed. See United States v. Szilvagyi, 398 F. Supp. 2d 842, 847 (E.D. Mich. 2005) (holding, where the defendants entered guilty pleas but later appealed, that the government was "entitled to the full preclusive effect of th[e] judgment," and the defendants could later seek relief under Fed. R. Civ. P. 60(b)(5) if the criminal judgment was reversed on appeal). Defendant CTI did not respond to the instant motion. Defendant Conner does not directly challenge the government's factual presentation; instead, defendant Conner argues the government is not entitled to judgment as a matter of law.

## B. Liability under the False Claims Act

The government contends the criminal convictions for health care fraud have collateral estoppel effect, and prevent defendants from denying liability for violating the FCA. A prior criminal conviction may have such effect, see United States v. Wight, 839 F.2d 193, 195 (4th Cir. 1998), if the issues have been distinctly put to the jury and directly determined in the prior criminal trial, see Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569 (1951). See also 31

U.S.C. § 3731(d) ("[A] final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements . . . shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under [31 U.S.C. §§ 3730(a) or (b)]."). In making this determination, the court may consider the prior judgment, pleadings, evidence submitted, and instructions which allowed the jury to reach its verdict. See Emich Motors Corp., 340 U.S. at 569.

While a violation of the FCA and the criminal charge of health care fraud have different elements, the magistrate judge found all elements of an FCA claim were presented to and decided by the jury in the criminal case. Accordingly, the magistrate judge recommends the court find defendants collaterally estopped from contesting liability for at least one violation of the FCA. Defendant Conner objects to this recommendation, but in so doing merely incorporates the arguments made in his response and evaluated by the magistrate judge. The court has reviewed the issue *de novo*, and agrees with the magistrate judge's analysis as presented in the M&R. Accordingly, this portion of the M&R is adopted as the court's own, and for the reasons discussed therein defendants CTI and Conner are estopped from denying their liability for violating the FCA.

## C.  Damages

For each violation of the FCA, a defendant "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a). The government argues the criminal convictions of 343 counts of health care fraud establish 343 false claims, and seeks the maximum statutory penalty of $10,000.00 for each violation. The government also seeks treble damages, based on the full restitution figure in the judgment, $604,342.48, for total

7

damages of $5,243,027.44. For the reasons set forth below, the court awards partial summary judgment in favor of the government against defendants CTI and Conner, in the amount of $10,000.00, which is the maximum civil penalty for a single violation of the FCA, and $1,576,611.00 in treble damages, for the sum of $1,586,611.00, for which these defendants are jointly and severally liable.

## 1. Number of claims

The magistrate judge recommends the court not enter summary judgment at this time as to the amount of damages, because the number of discrete violations of the FCA cannot be determined on the evidence of record. The government objects, arguing one count of health care fraud is equivalent to one false claim. The court reviews this issue *de novo*.

While defendants were convicted of 343 counts of health care fraud, the jury never determined the number of false claims actually submitted to the government. The government suggests each count of health care fraud represented one ambulance trip which defendants improperly claimed was medically necessary, and that one claim was submitted for each trip. The essential elements of health care fraud are (1) a scheme or artifice to defraud or to obtain by false or fraudulent pretenses; (2) with the requisite intent – knowing and willful execution or attempted execution of the scheme; (3) for the payment of money; (4) from a health care benefit program. See 18 U.S.C. § 1347. Conduct beyond the submission of an individual claim could satisfy these requirements; as noted by the magistrate judge, this could include bill and record preparation.[2] Similarly, the record in this case does not foreclose the possibility of requesting

---

[2] The court does not rule today on whether such conduct satisfies 31 U.S.C. § 3729(a)(2), which establishes liability for "[a]ny person who – knowingly makes, uses, or causes to be made or used, a false record or statement to get
(continued...)

8

reimbursement for multiple ambulance trips in a single claim.

The government relies only upon the criminal judgments against defendants CTI and Conner, and the superseding indictment, in furtherance of its motion for summary judgment and the argument that this evidence establishes 343 FCA violations.

The cases cited by the government as establishing a sufficient basis on which to award the relief requested are distinguishable. In United States v. Fliegler, 756 F. Supp. 688 (E.D.N.Y. 1990), the government brought suit against a defense contractor, for submitting fraudulent claims under several contracts or subcontracts for the production of military hardware. The case has little bearing on the instant action because the defendants stipulated to the fact that they submitted 61 false claims. Fliegler, 756 F. Supp. at 691. The government does not point to any similar stipulation or admission in the instant case. In Szilvagyi, the defendants' underlying crime was conspiracy to commit health care fraud, but there is little discussion of how the court arrived at its conclusion that the defendants submitted four false claims, beyond reviewing the transcript of the Rule 11 hearings on their guilty pleas. See Szilvagyi, 398 F. Supp. 2d at 850. In United States v. Diamond, 657 F. Supp. 1204 (S.D.N.Y. 1987), the criminal conviction included numerous counts of submitting false claims. Another case, United States v. Byrd, 100 F. Supp. 2d 342 (E.D.N.C. 2000), finding 264 FCA violations, is not entirely clear as to whether the defendant wrongfully accepted food stamps 264

---

²(...continued)
a false or fraudulent claim paid or approved by the Government." See United States ex rel Virgin Islands Housing Authority v. Coastal General Const. Services Corp., 299 F. Supp. 2d 483 (D.V.I. 2004) (holding the defendant liable under sections 3729(a)(1) and (2), on a more developed factual record). The second cause of action in the amended complaint is made under this statute, and while the government's briefing at times argues for liability under section 3729(a)(2), the primary focus of its argument is always section 3729(a)(1), which makes liable "[a]ny person who – knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." The lack of evidence supporting the government's motion creates this uncertainty, and the court will not at this stage go beyond that presentation in ruling on the amount of damages.

times, or sought to redeem multiple food stamps on 264 occasions; the latter appears to be the better assumption, however.

The magistrate judge was correct in his conclusion that "the court cannot assess if all 343 counts of health care fraud were based on fraudulent claims presented to the government." (M&R at 7.) This would be the most, the government's suggestion that there are additional false claims for which it could pursue recovery notwithstanding. But, at the least, one violation of the FCA has been shown, and, at a minimum, an award of $10,000.00, the maximum civil penalty, is appropriate against both defendants, jointly and severally. Efficiency and expediency favor decision now on this minimum amount of recovery on motion under Fed. R. Civ. P. 56; the government will have to present more evidence to establish its right to recovery for additional alleged violations of the FCA.

### 2. Treble damages

While not squarely addressed by the magistrate judge, nor commented upon more particularly by the government in its objection, the court turns its attention now to a determination of treble damages. The magistrate judge did not reach the issue of treble damages, upon determination that the damages analysis must end upon his recommended finding that the number of false claims cannot be determined on the present record. The undersigned goes forward here on the finding that at least one violation has been shown, where at sentencing, the court found the actual loss to the federal government to be $525,537.00, and ordered restitution in this amount to be made by defendants. The court finds this amount represents "the amount of damages the Government sustain[ed] because of the act of" defendants, for purposes of 31 U.S.C. § 3729(a). See Szilvagyi, 398 F. Supp. 2d at 849-50 (awarding treble damages based on restitution figure found by court in related criminal prosecution for health care fraud); see also United States v. Bickel, 2006 WL 1120439, *4 (C.D. Ill.

10

2006) (trebling actual damages portion of restitution amount from underlying criminal action); United States v. Peters, 927 F. Supp. 363, 368 (D. Neb. 1996) (trebling restitution award).

The government also requests in the underlying motion that the damage award include a trebling of the $78,805.48 ordered to be paid in restitution to the North Carolina Attorney General's Office. However, there has been no specific showing that a loss suffered by a state agency qualifies as "damages the Government sustains" for purposes of section 3729(a), and that the federal government is entitled to a trebled award of this amount.

Defendant Conner challenges the basing of civil treble damages on the criminal restitution figure. However, defendant's arguments in this regard miss the mark, because defendant cites to limits on the use of extrapolation of overpayments by Medicare contractors. There is no indication that the court is so limited, or that the line of argument even approaches the precise issue of criminal restitution. Furthermore, defendant complains that "after an audit of Convalescent Transports there was a recommendation that education be provided to Convalescent Transports, but that no such education was ever provided!" (Def's Resp. at 7.) Again, defendant Conner fails to connect these arguments to the court's findings on the government's loss for purposes of restitution in the criminal case, and the propriety of considering that figure in this case.

Accordingly, the court awards treble damages of $1,576,611.00 (3 x $525,537.00), assessed against these defendants, who are jointly and severally liable. This amount is not grossly disproportionate to the gravity of the offense.

CONCLUSION

After careful consideration, the court hereby ADOPTS in part the recommendation of Magistrate Judge Daniel, as to liability. Pursuant to Fed. R. Civ. P. 56(d), the government's motion

11

for summary judgment (DE # 35) is GRANTED in part and DENIED in part. Judgment shall be entered against defendants Convalescent Transport, Inc. and Brian Conner, in the amount of Ten Thousand and No/100 Dollars ($10,000.00), which is the civil penalty, and One Million Five Hundred Seventy-Six Thousand Six Hundred Eleven and No/100 Dollars ($1,576,611.00) in treble damages, for the sum of One Million Five Hundred Eighty-Six Thousand Six Hundred Eleven and No/100 Dollars ($1,586,611.00), for which these defendants are jointly and severally liable.

Where the grounds for the stay of this case, particularly the avoidance of duplicative discovery, are no longer applicable, and where no party complied with the order of June 30, 2004, requiring a joint report within fourteen (14) days of the disposition of the criminal case, nor has any party requested any further discovery, the stay is hereby LIFTED. This case is SET for jury trial, as to all remaining issues and civil claims, on the court's October 29, 2007 civil trial calender, with trial to take place at the Terry Sanford Federal Building and Courthouse, Raleigh, North Carolina.

Pursuant to Fed. R. Civ. P. 16(d), a final pretrial conference will be scheduled before the undersigned at the United States Courthouse, New Bern, North Carolina at a date and time approximately two weeks in advance of trial pursuant to notice of the Clerk of Court which shall issue approximately two months prior to said conference date.

Conduct of pretrial conference and trial will be as set out in Part IV of the case management order entered February 12, 2004.

SO ORDERED, this the 18th day of July, 2007.

LOUISE W. FLANAGAN
Chief United States District Judge

12